**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-25237-BLOOM**

JONATHAN JAVIER OCON QUIROZ,

Petitioner,

v.

WARDEN, MIAMI FEDERAL
DETENTION CENTER, *et al.*,

Respondents.
_________________________________/

**ORDER GRANTING 28 U.S.C. § 2241 PETITION**

**THIS CAUSE** is before the Court upon *pro se* Petitioner Jonathan Javier Ocon Quiroz's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), alleging that he has been unlawfully detained in Immigration and Customs Enforcement ("ICE") custody. ECF No. [1]. The Court issued its Order to Show Cause, ECF No. [7], and Respondents filed a Response, ECF No. [11], to which Petitioner filed a Reply, ECF No. [13]. The Court has considered the Petition, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Petition is granted in part.

## I. BACKGROUND

Petitioner, a native and citizen of Nicaragua, presented himself for admission at a port of entry on September 5, 2015. ECF Nos. [1] ¶ 18; [11-1] at 2. Petitioner was ordered removed under expedited removal and was returned to Nicaragua that same day. ECF Nos. [1] ¶ 18; [11-1] at 2. On August 18, 2022, Petitioner entered the United States across the southern border without inspection. ECF No. [1] ¶ 19. On April 23, 2024, Petitioner was arrested on criminal charges that were later dismissed. *Id.* ¶ 20. On April 24, 2024, ICE reinstated Petitioner's removal order. ECF

No. [11-3] at 1. Petitioner was taken into immigration custody on April 26, 2024. ECF No. [11-10] at 1.

On June 10, 2024, U.S. Citizenship and Immigration Services made a positive reasonable fear of persecution determination in Petitioner's case and referred the case to the Executive Office for Immigration Review. ECF No. [11-4]. On July 31, 2024, Petitioner filed an application for withholding of removal and relief under the Convention Against Torture. ECF No. [11-1] at 2. On December 18, 2024, an immigration judge granted Petitioner withholding of removal. ECF Nos. [1] ¶ 22; [11-6] at 12. On December 23, 2024, Petitioner was released on an Order of Supervision ("OSUP"). ECF Nos. [1] ¶ 23; [11-7].

After his release, Petitioner reported to Respondents on every occasion he was directed to do so, including in January 2025, February 2026, May 2026, and on July 10, 2026. ECF No. [1] ¶ 24. Petitioner never failed to appear, never absconded, never changed his address without notice, and was never accused of violating any term or condition of his supervision. ECF No. [1] ¶ 25. On July 10, 2026, when Petitioner reported to a scheduled OSUP check-in appointment, Respondents revoked Petitioner's OSUP and took him into custody. ECF Nos. [1] ¶ 28; [11-8]. Respondent was served with a Notice of Revocation of Release ("Notice of Revocation"). ECF No. [11-8].

On August 3, 2026, Petitioner filed the instant Petition, asserting five grounds for relief: (1) Unlawful Revocation of Release in Volitation of 8 C.F.R. § 241.4 (Count I); (2) Denial of Procedural Due Process (Count II); (3) Unlawful Detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas* (Count III); (4) Denial of Substantive Due Process (Count IV); and (5) Denial of Notice and an Opportunity to Seek Protection from Removal to a Third Country (Count V). ECF No. [1]. The Government responded, ECF No. [11], and Petitioner replied, ECF No. [13].

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. §2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

As an initial matter, Respondents argue that the Court does not have jurisdiction to review ICE's decision to revoke Petitioner's release and take him into custody because those actions were taken for the purpose of executing a final order of removal. ECF No. [11] at 6-7. While § 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal basis for those discretionary decisions and actions." *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). "The Eleventh Circuit has consistently held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its own regulations and procedures." *See Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (citing *Kurapati v. U.S. Bureau of Citizenship and Immig. Services*, 775 F.3d 1255, 1262 (11th Cir. 2014) (finding that § 1252(a)(2)(B)(ii) did not prevent the Court from assessing whether the government followed its procedures when it revoked petitioner's visa petition)).

Petitioner does not challenge the underlying removal order. *See generally* ECF No. [1]. Petitioner also does not challenge that Respondents may revoke an order of supervision. *Id.* Rather,

Petitioner challenges Respondents' compliance with permissible bases to revoke an OSUP and proper OSUP revocation procedures. Therefore, jurisdiction is proper. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (holding that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."); *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1249 (S.D. Fla. 2025) (holding that § 1252(g) did not strip the court of jurisdiction to evaluate whether the government complied with OSUP revocation procedures).

**B. Unlawful Revocation of Order of Supervision (Count One)**

Petitioner argues that under the *Accardi* doctrine — which requires agencies to follow their own binding regulations — revocation requires notice of the reasons for revocation and an opportunity to respond. ECF No. [1] ¶¶ 36, 40-43. Here, the circumstances of Petitioner's re-detention violate that doctrine, in that Respondents did not provide notice of the reasons for revocation or a meaningful opportunity to respond. *Id.* ¶ 45. In their Response, Respondents state that "Petitioner's OSUP was revoked pursuant to his removal order." ECF No. [11] at 4 (citing ECF No. [11-8]). Respondents provide evidence that a Notice of Revocation was served on Petitioner on July 10, 2026. ECF No. [11-8].

The basic premise of the *Accardi* doctrine, drawn from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), is that "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). Furthermore, it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Thus, the Court begins by discussing the applicable regulations. The Notice of Revocation describes itself as operating under 8 C.F.R. § 241.4. ECF No. [11-8]. The Court finds that this provision is correctly applied, as opposed to § 241.13. As described in the regulation itself:

> The custody review procedures in this section [§ 241.4] do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). Here, where ICE apparently made a subsequent determination on the likelihood of removal, the Court agrees that § 241.4 applies.

Under § 241.4, there are two broad categories for revocations of release. Section 241.4(*l*)(1) covers revocation in response to a violation of the conditions of release. For those detained pursuant to § 241.4(*l*)(1), the regulation requires notification of the "reasons for revocation of his or her release or parole," as well as "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1). Section 241.4(*l*)(2) is broader and includes cases where "[t]he purposes of release have been served," "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(*l*)(2)(i),(ii),(iv). Though § 241.4(*l*)(2) does not technically contain the same notice and interview requirements, courts have "interpreted section 241.4(*l*) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation" — that is, that the notice and informal interview requirement found in § 241.4(*l*)(1)

applies to revocation under § 241.4(*l*)(2). *See Ceesay*, 781 F. Supp. 3d at 163 (collecting cases); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) ("[P]aragraph (*l*) sets forth a unified set of procedures for the revocation of removal."); *Grigorian*, 824 F. Supp. 3d at 1252.

In this case, where there is no allegation that Petitioner violated any conditions of his release, § 241.4(*l*)(2) applies. Thus, the Court turns to considering whether the procedures required by § 241.4(*l*)(2) have been followed.

The Court begins with the notice requirement. "The undisputed purpose of this requirement is to give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang v. Genalo*, 814 F. Supp. 3d 307, 324 (E.D.N.Y. 2025). Based on this purpose, the Notice of Revocation was plainly insufficient. The Notice of Revocation provides that on July 10, 2026, Petitioner "will be afforded an informal interview" at which he could "respond to the reasons for this revocation." ECF No. [11-8] at 2. However, the Notice of Revocation did not adequately inform Petitioner of the reason his OSUP was revoked. The Notice of Revocation explained that "[o]n 09/05/2015, you were ordered removed to Nicaragua, but you were granted withholding of removal to Nicaragua. Your case is under review for removal to an alternate country." *Id.* at 1, 2. However, there is no box checked on the Notice of Revocation indicating upon what finding his OSUP was revoked.

The Notice of Revocation checks two boxes indicating that Petitioner was ordered removed to Nicaragua: one under the finding that "[i]t is appropriate to enforce a removal order[,]" and the other under the finding that "[c]ircumstances have changed such that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* Checking the box under a finding is not sufficient to provide notice that Petitioner's release was revoked based on the finding listed above. If it were, Petitioner's release would have been revoked for two

separate reasons, invoking different regulations: 8 C.F.R. § 241.4(*l*)(2)(iii) to enforce a removal order and 8 C.F.R. 241.13(i)(2) regarding changed circumstances.

Respondents now assert that "Petitioner's OSUP was revoked pursuant to his removal order." ECF No. [11] at 4 (citing ECF No. [11-8]). If that were the reason, ICE should have checked the appropriate box. It did not.[1] Neither do the boxes checked regarding his order of removal provide the reasons for revocation because being "granted withholding of removal" or that Petitioner's "case is under review for removal to an alternate country" does not provide Petitioner notice of the finding required by 8 C.F.R. § 241.4(*l*)(2)(iii) — that revocation "is appropriate to enforce a removal order[.]" 8 C.F.R. § 241.4(*l*)(2)(iii).

The Notice of Revocation thus provided unclear and insufficient notice of ICE's basis and reasons for revoking Petitioner's OSUP, which does not afford Petitioner a meaningful opportunity to respond to or otherwise contest the reasons for revocation. Therefore, the Court finds the Notice of Revocation is insufficient to satisfy § 241.4.

The question, then, is whether the lack of sufficient notice renders Petitioner's detention as a whole unlawful, such that release is the appropriate remedy. Among courts that have confronted similar issues, the majority hold that the failure to provide adequate notice upon revocation of an order of supervision is grounds for release. *See, e.g.*, *Losada Diaz v. Parra*, No. 25-22624-CV, 2026 WL 1223375, at *5 (S.D. Fla. Jan. 25, 2026); *La Rosa Hernandez v. Parra*, No. 26-21701-CIV, 2026 WL 1221818, at *6 (S.D. Fla. Apr. 2, 2026); *Lugones v. Parra*, No. 26-21615-CIV, 2026 WL 1223378, at *6 (S.D. Fla. Mar. 30, 2026).

---

[1] Respondents do not argue that Petitioner's release was revoked due to changed circumstances. *See generally* ECF No. [11]. Nor could they, as the grant of withholding of removal had remained unchanged since Petitioner's initial release on an OSUP; this did not represent new information. Indeed, ICE points to nothing that occurred between that release and Petitioner's re-detention that would indicate a change in circumstances. *See* ECF No. [11-8].

The Court agrees with the reasoning in those cases. That is, where ICE fails to follow its own regulations in re-detaining a petitioner — the very regulations designed to protect the petitioner's due process rights — the petitioner is entitled to release, just as much as the petitioner would be if his due process rights were violated in any other way. *Ceesay*, 781 F. Supp. 3d at 166; *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165 (S.D. Cal. 2025) ("ICE's failure to follow such regulations thereby also violated Petitioner's constitutional due process rights.").

Ultimately, the Court finds that the Government was not entitled to detain Petitioner without offering him an actual account of its reasons for doing so and a meaningful opportunity to contest those reasons. Indeed, "if men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The Court thus finds that Petitioner must be released from custody.[2]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1]**, is **GRANTED in part**.
2. Respondents are directed to immediately release Petitioner pursuant to the terms of his prior Order of Supervision.
3. Respondents shall certify compliance with this Order on or before **September 24, 2026**.
4. The Clerk of Court shall **CLOSE** this case.
5. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

---

[2] Because the Court finds release warranted on the basis of Count I, it does not reach Petitioner's remaining grounds.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 17, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Jonathan Javier Ocon Quiroz, *Pro Se*
A# 208413849
Miami FDC
Federal Detention Center
Inmate Mail/Parcels
Post Office Box 019120
Miami, FL 33101